**IT IS ORDERED as set forth below:**



**Date: September 26, 2024**

_____

**Barbara Ellis-Monro
U.S. Bankruptcy Court Judge**

_____

**UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| IN RE:<br><br>KELVIN BERNARD JOHNSON and TRACEY ANN JOHNSON,<br><br>   Debtors. | CASE NO. 19-51667-BEM<br><br><br><br>CHAPTER 7 |
| S. GREGORY HAYS, Chapter 7 Trustee, for the Estate of Kelvin Bernard Johnson and Tracey Ann Johnson,<br><br>   Plaintiff,<br><br>v.<br><br>NEW DAY FINANCIAL, LLC,<br><br>   Defendant. | <br><br><br><br>ADVERSARY PROCEEDING NO. 20-6026-BEM |

**O R D E R**

This matter is before the Court on Plaintiff's *Motion for Partial Summary Judgment as to Count II and Count III of Complaint*. [Doc. 25]. Plaintiff initiated this proceeding on February

3, 2020, by filing a complaint (I) to avoid the transfer of a security interest in real property, (II) to recover the interest from Defendant, and (III) to preserve the interest for the benefit of the estate. [Doc. 1]. Defendant did not file an answer, and on October 26, 2023, the Court entered a default judgment for Plaintiff on Count I of the complaint. [Doc. 18]. Plaintiff now seeks summary judgment on Counts II and III. Defendant did not respond, and the Motion is deemed unopposed. BLR 7007-1(c). On September 3, 2024, the Court held a hearing on the Motion to consider appropriate damages. Michael J. Bargar appeared for Plaintiff and no one appeared for Defendant.

**I. Summary Judgment Standard**

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986); Fed. R. Civ. P. 56(a), (c); Fed. R. Bankr. P. 7056. The Court will only grant summary judgment when the evidence, viewed in the light most favorable to the nonmoving party, shows no genuine dispute of material fact. *Tippens v. Celotex Corp.*, 805 F.2d 949, 953 (11th Cir. 1986). A fact is material if it "might affect the outcome of the suit under the governing law …." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986). A dispute of material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. The moving party has the burden of establishing its entitlement to summary judgment. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991).

2

**II. Undisputed Facts**

Plaintiff filed a *Statement of Material Facts as to Which There Is No Dispute* [Doc. 28]. Defendant did not contest any statements of fact, and therefore all factual matter in Plaintiff's Statement is deemed admitted. BLR 7056-1(a)(2). The undisputed material facts are as follows:

On January 31, 2019, Debtors filed a Chapter 7 bankruptcy petition. [Doc. 28 ¶ 1]. Plaintiff is the Chapter 7 trustee for the case. [Id. ¶ 3]. As of the petition date, Debtors owned real property located at 4815 Village Square Northwest, Acworth, Cobb County, Georgia (the "Property"). [Id. ¶ 4]. On April 30, 2009, by way of a warranty deed (the "Warranty Deed") Debtors were granted an ownership interest as joint tenants with the right of survivorship in the Property. [Id. ¶ 5]. The Warranty Deed was recorded in the real property records of Cobb County, Georgia on May 14, 2009. [Id.]. On December 21, 2017, Debtors executed a Security Deed (the "Security Deed") in favor of Defendant to secure a debt in the principal amount of $208,308 (the "First Transfer"). [Id. ¶ 6]. The Security Deed was recorded on January 3, 2018 (the "Second Transfer," and together with the First Transfer, the "Transfers"). [Id.].

Defendant is the initial transferee of an interest in the Property from Debtors, or Defendant is the entity for whose benefit the Transfers were made. [Id. ¶ 7]. The Security Deed is patently defective because Debtors' execution of the Security Deed was not attested by an official witness as is required under Georgia law. O.C.G.A. § 44-14-61. [Id. ¶ 8]. The Security Deed did not provide constructive or actual notice of any security interest to a bona fide purchaser and therefore, Plaintiff, as a hypothetical bona fide purchaser of real property, has a claim in the Property superior to Defendant's, allowing Plaintiff to avoid the transfer under 11 U.S.C. § 544(a)(3). [Id. ¶ 9].

3

On October 26, 2023, the Court entered an order granting Plaintiff's Motion for Default Judgment as to Count I of the complaint, holding: "In conclusion, because the Security Deed lacks attestation by an official witness, which is a patent defect, the Security Deed fails to provide actual or constructive notice to a bona fide purchaser notwithstanding recordation. As a result, Plaintiff may avoid the Transfers under 11 U.S.C. § 544(a)(3)." [Id. ¶ 11-12]. On October 26, 2023, the Court entered a Judgment, which provided: "In accordance with the Order entered on even day herewith it is hereby ORDERED, ADJUDGED, and DECREED that the Transfers are avoided under 11 U.S.C. § 544(a)(3)." [Id. ¶ 13]. Plaintiff filed a Status Report on June 12, 2024, stating, "Trustee is evaluating whether to seek a money judgment against the Defendant in the instant adversary proceeding, or to dismiss the remaining counts without prejudice and initiate a new adversary proceeding against the Defendant." [Id. ¶ 14]. After receiving a service copy of the Status Report, Crystal Raines, Chief Compliance Officer of Defendant, sent an electronic mail message to counsel for Plaintiff, on June 26, 2024, which stated in part: "[Defendant]'s interest in the mortgage loan for the named borrowers was sold to Freedom Mortgage on 8/27/2018. [Defendant] has been forwarding the bankruptcy correspondence to Freedom Mortgage when received." [Id. ¶ 15].

**III. Analysis**

Plaintiff has already obtained a default judgment against Defendant avoiding the Transfers under § 544(a)(3). Plaintiff now seeks summary judgment pursuant to §§ 550(a) and 551. Section 550(a) provides that

> to the extent that a transfer is avoided under section 544 … of this title, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from—
> (1) the initial transferee of such transfer or the entity for whose benefit such transfer was made[.]

4

11 U.S.C. § 550(a)(1). Section 551 provides that "[a]ny transfer avoided under section … 544 … of this title … is preserved for the benefit of the estate but only with respect to property of the estate."

The undisputed facts show that the Transfers were avoided under § 544 and that Defendant was the initial transferee of the Transfers. Therefore, Plaintiff is entitled to recover the property transferred or the value of the property. This Court has previously ruled that a trustee's avoidance of a lien automatically preserves that lien for the estate under § 551, such that there is no basis for a monetary recovery of the value of the property. *Gordon v. U.S. Bank, N.A.* (*In re William*), AP 19-5265, 2020 WL 7137327, at *4 (Bankr. N.D. Ga. Dec. 4, 2020) (Ellis-Monro, J.) (citing *In re Bremer*, 408 B.R. 355, 360 (10th Cir. B.A.P. 2009), *aff'd sub nom In re Trout*, 609 F.3d 1106 (10th Cir. 2010)). However, the Court noted that "[s]ituations do occur where § 551's operation is not sufficient to fully reimburse the estate and where the court will order the value of the transferred property be paid to the estate." *Id.* at *5 (citations omitted).

Plaintiff argues that a monetary recovery is appropriate in this case because Defendant sold its interest in the Property prior to the petition date and no longer holds it. Because it is not possible for Plaintiff to recover the security interest from Defendant, Plaintiff is entitled to recover the value of the Transfers. Plaintiff seeks a judgment in the amount of $208,308, the amount of loan.

The Court takes judicial notice that Plaintiff settled a second adversary proceeding in Debtors' bankruptcy case against Freedom Mortgage Corporation involving a post-petition refinance of the debt on the Property (the "2022 AP"). [AP 22-5020; Case No. 19-51667, Docs. 37, 40]. In the 2022 AP, Plaintiff asserted a claim for violation of the automatic stay and requested damages under 11 U.S.C. § 105(a) and/or § 362(k). [AP 22-5020, Doc. 1 ¶ 43]. Additionally,

5

Plaintiff asserted a claim for unauthorized postpetition transfer under § 549 and sought recovery under § 550(a). [Id. ¶ 49, 52]. Under the settlement agreement, Freedom Mortgage was obligated to pay Plaintiff $100,000, Freedom Mortgage's lien was deemed properly perfected, and the underlying transaction was deemed valid and enforceable. [Case No. 19-51667, Doc. 36 ¶ 10].

At the September 3, 2024, hearing, the Court inquired of Plaintiff whether a recovery in this proceeding would run afoul of the single satisfaction rule in § 550(d).[1] Plaintiff argued that the two proceedings involve two different transfers, and the single satisfaction rule only applies to the same transfer, pointing out that "no trustee seeks to recover the same asset twice, but they most assuredly want to collect it once." *In re Ruiz*, 455 B.R. 745, 752 (BAP 10th Cir. 2011) (§ 542 turnover case). Plaintiff further argued that the stay violation alleged in the 2022 AP was particularly egregious and, by itself, warranted the $100,000 settlement. Alternatively, Plaintiff argued that he is entitled to a judgment of $108,208 in this proceeding taking into account the $100,000 he has already received.

Plaintiff cites to *Loo v. Martinson* (*In re Skywalkers, Inc.*) 49 F.3d 546 (9th Cir. 1995), for the proposition that avoidance of one transfer is not a satisfaction for avoidance of another transfer. In that case, in February 1989 the debtor purchased a liquor license from Loo for $90,000 to be paid in installments with a balloon payment, while Loo retained a lien in the license, which was not properly perfected. In July 1990, the debtor was unable to make the balloon payment, and the parties modified the note requiring an immediate payment of almost $64,000, with the balance due in six months. Despite being insolvent, the debtor borrowed money to make the immediate payment to Loo and then filed bankruptcy in October 1990. The trustee sought to avoid Loo's lien under § 544 and in a separate proceeding sought to avoid the payments made by

---

[1] "The trustee is entitled to only a single satisfaction under subsection (a) of this section." 11 U.S.C. § 550(d).

6

the debtor to Loo as preferences. The trustee prevailed in both matters, such that he avoided Loo's lien on the liquor license and recovered the amounts paid to Loo for the liquor license. *Id.* at 547. Loo argued that the recovery of the preferential payments was an impermissible double recovery under § 550. The court disagreed, stating:

> The avoidance of the lien under § 544 was not a satisfaction of the preference claim. The recovery of the $79,897 funds paid to Loo is the sole recovery on the preference action. No other preference recovery was obtained by the estate. The fact that the estate retained the license and received the proceeds of its sale is of no consequence to the preference action. Loo still retains an unsecured claim for the amount owed her on the unpaid portion of the contract of sale; the Skywalker estate still owes Loo. What she will receive from the estate will be determined pursuant to the distribution provisions of the Code, as will payment of other unsecured claims. She will not, however, be able to retain preferential payments in satisfaction of her claim.

*Id.* at 549.

The Court also rejected Loo's argument that it was inequitable to allow the trustee "to keep both the liquor license and the money that [the debtor] paid for it." *Id.* The court noted that the "avoidance and recovery provisions simply allow a trustee to return a corporation to its condition before the preferential transfers" and that "[r]ather than being inequitable," allowing the trustee to prevail on both recoveries "is really the only fair result for the other creditors." *Id.*

Different equitable issues arose in *Bakst v. Wetzel* (*In re Kingsley*), in which the Eleventh Circuit considered whether the recovery from an avoided fraudulent transfer can be adjusted "to reflect the transferee's pre-petition repayment of funds or return of property to the debtors" when there has been a finding of actual fraud. 518 F.3d 874, 877 (11th Cir. 2008). In that case, the debtors transferred approximately $4,500 to the debtor-wife's father to avoid it being seized by their bank to pay a credit card debt. *Bakst v. Wetzel* (*In re Kingsley*), 2007 Bankr. LEXIS 1755, at *2 (Bankr. S.D. Fla. May 17, 2007). The father then paid nearly all the money to the debtors and their creditors prepetition. The father paid approximately $215 of the money to a

7

creditor of the debtors postpetition. *Id.* at *3. The bankruptcy court found that the transfer to the father was both actively and constructively fraudulent. Nevertheless, instead of awarding a recovery of the full amount of the fraudulently transferred funds, the bankruptcy court reduced the father's liability by prepetition amounts that he had paid on the debtors' behalf, but did not reduce liability for similar postpetition payments by the father. In doing so the bankruptcy court relied on equitable considerations to prevent a windfall to the estate. *Id.* at *13-14. The Eleventh Circuit affirmed the bankruptcy court but noted a split of authority on the issue. 518 F.3d at 877-78.

Neither *Skywalkers* nor *Kingsley* is directly on point. What they have in common is an understanding that the purpose of avoidance actions is to return the bankruptcy estate to the position it would have occupied had the transfers not occurred. However, as demonstrated in *Kingsley*, it is not intended to provide a windfall to the estate, and the bankruptcy court may use its equitable powers to prevent such a windfall.

Here, the Property was apparently refinanced multiple times by Debtors, including a prepetition refinance that resulted in the Transfers in this proceeding and a postpetition refinance that is the subject of the 2022 AP. The undisputed facts do not indicate whether the Property was encumbered prior to the Transfers at issue in this proceeding or if the Transfers satisfied a prior lien. The undisputed facts also do not indicate whether Defendant's lien was satisfied by a subsequent refinance, although it seems likely.

During the September 3 hearing, counsel for Plaintiff stated that initially Debtors' case had about $370,000 in claims, and about $326,000 of those claims were for student loan debt that has been recently forgiven, leaving less than $50,000 in unsecured claims. So even if the recovery in this proceeding is limited to $108,208 when added to the $100,000 recovered in the

8

2022 AP, there should be sufficient funds to pay all claims in full, pay administrative expenses, and likely result in a surplus to Debtors.

Based on these facts, any recovery in excess of $108,208 would result in a windfall to the estate that would ultimately inure to the benefit of Debtors due to the surplus nature of the case. Considering that the unauthorized post-petition transfer at issue in the 2022 AP was presumably initiated by Debtors, such a windfall is not equitable, and the Court finds it appropriate to reduce the recovery in this proceeding by the $100,000 Plaintiff received in the 2022 AP.

In accordance with the foregoing, it is

ORDERED that Plaintiff is entitled to summary judgment on Counts II and III of the complaint; it is further

ORDERED that the Motion is GRANTED; it is further

ORDERED that judgment is granted in favor of Plaintiff and against Defendant as initial transferee of the Transfers in the amount of $108,308 plus post-judgment interest at the applicable federal rate pursuant to 11 U.S.C. § 550(a) as recovery for the value of the property that is the subject of the Transfers and that the Transfers are preserved for the benefit of the estate pursuant to § 551.

**END OF ORDER**

**Distribution List**

Michael J. Bargar
Rountree Leitman Klein & Geer LLC
Century Plaza I
2987 Clairmont Road, Suite 350
Atlanta, GA 30329

New Day Financial, LLC
c/o Registered Agent Solutions, Inc., its
Registered Agent
900 Old Roswell Lakes Parkway
Suite 310
Roswell, GA 30076

Crystal Raines
Chief Compliance Officer
New Day Financial, LLC
8115 Maple Lawn Blvd., Suite 400
Fulton, MD 20759

Robert Posner, CEO
New Day Financial, LLC
8160 Maple Lawn Boulevard
Fulton, MD 20759